1  *(Counsel of record on next page*

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11  SERGIO GARCIA, on behalf of himself and all        No. 2:19-CV-01249-TLN-DB
    others similarly situated,

12                                                      **MEMORANDUM IN SUPPORT OF JOINT**
                        Plaintiff,                      **MOTION FOR PRELIMINARY**
13                                                      **APPROVAL OF CLASS ACTION**
            vs.                                         **SETTLEMENT, CONDITIONAL**
14                                                      **CERTIFICATION OF CLASS,**
    TARGET CORPORATION, a Minnesota                     **APPOINTMENT OF CLASS**
15  corporation, and DOES 1 through 50, inclusive,      **REPRESENTATIVE, CLASS COUNSEL,**
                                                        **AND SETTLEMENT ADMINISTRATOR,**
16                      Defendants.                     **APPROVAL OF CLASS NOTICE, AND**
                                                        **SETTING OF FINAL APPROVAL**
17                                                      **HEARING**

18                                                      Date:        September 30, 2021
                                                        Time:        2:00 p.m.
19                                                      Courtroom:   2
                                                        Judge:       Hon. Troy L. Nunley
20
                                                        SAC Filed:   February 21, 2020
21                                                      Trial Date:  None set

22

23

24

25

26

27

28

LEGAL_US_W # 109058127.1

JAMES R. HAWKINS (Cal. State Bar No. 192925)
ISANDRA FERNANDEZ (Cal State Bar No. 220482)
JAMES HAWKINS APLC
9880 Research Drive, Suite 200
Irvine, California 92618
Telephone: (949) 387-7200
Facsimile: (949) 387-6676
james@jameshawkinsaplc.com
isandra@jameshawkinsaplc.com

Attorneys for Plaintiff
Sergio Garcia

JEFFREY D. WOHL (Cal. State Bar No. 096838)
ERIC D. DISTELBURGER (Cal. State Bar No. 330042)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California  94111
Telephone:  (415) 856-7000
Facsimile:  (415) 856-7100
jeffwohl@paulhastings.com
ericdistelburger@paulhastings.com

Attorneys for Defendant
Target Corporation

# TABLE OF CONTENTS

*Page*

Table of Authorities................................................................................................ii

I.  INTRODUCTION/SUMMARY OF ARGUMENT ...................................... 1

II.  BACKGROUND ............................................................................................ 1

    A.  Procedural History and the Parties' Contentions ............................. 1

    B.  Discovery and Investigation of Facts ................................................ 3

    C.  Mediation ........................................................................................... 3

III.  Summary of the Proposed Settlement ......................................................... 4

    A.  Principal Terms .................................................................................. 4

    B.  Additional Terms ............................................................................... 5

IV.  The SETTLEMENT should BE GIVEN PRELIMINARY APPROVAL ........... 6

    A.  For Purposes of Settlement Only, Target Agrees That Plaintiff's Claims Merit Class Action Treatment ................................................................................ 8

        1.  Numerosity ............................................................................. 8

        2.  Commonality .......................................................................... 8

        3.  Typicality ............................................................................... 9

        4.  Adequate Representation ....................................................... 9

        5.  Predominance of Common Questions .................................. 10

        6.  Superiority of Class Action .................................................. 11

    B.  The Settlement Is Fair, Adequate and Reasonable .......................... 12

        1.  The Settlement Is the Result of Serious, Informed, Non-Collusive Negotiations ......................................................................... 12

        2.  The Extent of Discovery and the Stage of the Proceedings Support Settlement ............................................................................ 13

        3.  The Parties' Counsel Are Experienced in Similar Litigation ............... 14

        4.  The Settlement Is Fair and Reasonable Based on the Risks and Costs of Further Litigation .................................................................. 15

        5.  The Amount Offered in the Settlement Supports Approval ................. 17

        6.  The Fairness of the Distribution Supports Approval ........................... 17

    C.  The Form and Manner of Notice of the Settlement Complies with Rule 23 .............. 18

V.  THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING .............. 19

VI.  CONCLUSION ............................................................................................ 20

# TABLE OF AUTHORITIES

*Page*

**Cases**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ................................................................................................7

*Amchem Prods. Inc. v. Windsor*,
521 U.S. 591 (1997) ..................................................................................................................11

*Armstrong v. Bd. of Sch. Dirs. of Milwaukee*,
616 F.2d 305 (7th Cir. 1980) .....................................................................................................7

*In re Beef Indus. Antitrust Litig.*,
607 F.2d 167 (5th Cir. 1979), *cert. denied sub nom. Iowa Beef Processors, Inc. v.
Meat Price Investigators Ass'n*, 452 U.S. 905 (1981) ...............................................................7

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) .....................................................................................................9

*Blackwell v. Skywest Airlines, Inc.*,
245 F.R.D. 453 (S.D. Cal. 2007) ..............................................................................................17

*Boyd v. Bechtel Corp.*,
485 F. Supp. 610 (N.D. Cal. 1979) ...........................................................................................15

*Brown v. Federal Express Corp.*,
249 F.R.D. 580 (C.D. Cal. 2008) ..............................................................................................17

*Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*,
917 F.2d 1171 (9th Cir. 1990) ...................................................................................................9

*Castro v. ABM Indus., Inc.*,
325 F.R.D. 332 (N.D. Cal. 2018) ..............................................................................................15

*Consolidated Rail Corp. v. Town of Hyde Park*,
47 F.3d 473 (2d Cir. 1995) .........................................................................................................8

*Elkins v. Equitable Life Ins. Co.*,
No. Civ A96-296-Civ-T-17B, 1998 WL 133741 (M.D. Fla. Jan. 27, 1998) ...........................12

*Ellis v. Naval Air Rework Facility*,
87 F.R.D. 15 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981) ......................................15

*Felzen v. Andreas*,
134 F.3d 873 (7th Cir. 1998) .....................................................................................................7

*Fisher Bros. v. Cambridge-Lee Indus, Inc.*,
630 F. Supp. 482 (E.D. Pa. 1985) .............................................................................................15

*In re General Motors Corp.*,
55 F.3d 768 (3d Cir. 1995) ........................................................................................................15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ..........................................................................................7, 8, 9, 10

*Hanon v. Dataprods. Corp.*,
976 F.2d 497 (9th Cir. 1992) .....................................................................................................9

*Holmes v. Continental Can Co.*,
706 F.2d 1144 (11th Cir. 1983) ................................................................................................17

# TABLE OF AUTHORITIES
*(cont'd)*

Page

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007)..........................................................14

*Jamison v. Butcher & Sherrerd*,
  68 F.R.D. 479 (E.D. Pa. 1975)........................................................................7

*Kohler v. Hyatt Corp.*,
  No. EDCV 07-782-VAP, 2008 U.S. Dist. LEXIS 63392 (C.D. Cal. July 23, 2008)..........................17

*Krzesniak v. Cendant Corp.*,
  No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518 (N.D. Cal. June 20, 2007)................................8

*Leyva v. Medline Industries, Inc.*,
  716 F.3d 510 (9th Cir. 2013) .........................................................................10

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
  244 F.3d 1152 (9th Cir. 2001) ..................................................................10, 11

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .........................................................................13

*Mendoza v. United States*,
  623 F.2d 1338 (9th Cir. 1980) .......................................................................18

*In re Michael Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 57 (S.D.N.Y. 1993) .....................................................................19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950)......................................................................................18

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
  688 F.2d 615 (9th Cir. 1982) ......................................................12, 13, 16, 17

*Perez v. Safety-Kleen Sys., Inc.*,
  253 F.R.D. 508 (N.D. Cal. 2008) ..................................................................17

*Phillips Petroleum Co. v. Shutts*,
  472 U.S. 797 (1985)......................................................................................11

*Salazar v. Avis Budget Group, Inc.*,
  251 F.R.D. 529 (S.D. Cal. 2008) ..................................................................17

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) .........................................................................18

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ..............................................................7, 12, 13

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005)...................................................................11

*Uschold v. Carriage Servs., Inc.*,
  2020 WL 1466172 (N.D. Cal. Mar. 6, 2020).................................................15

*Valentino v. Carter-Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) .........................................................................11

# TABLE OF AUTHORITIES
*(cont'd)*

Page

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ........................................................................................7

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) .......................................................................................................16

*In re Warner Commc'ns Sec. Litig.*,
  618 F. Supp. 735 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986) ..............................14

*Watson-Smith v. Spherion Pac. Workforce LLC*,
  No. C 07-05774 JSW, 2008 U.S. Dist. LEXIS 106147 (N.D. Cal. Dec. 12, 2008)............17

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001), *amended*, 273 F.3d 1266 (9th Cir. 2001) .........................10

## Statutes and Rules

Cal. Lab. Code § 2802 ...........................................................................................8, 10, 15, 16

California Labor Code Private Attorneys General Act ("PAGA")...................................... *passim*

California Unfair Competition Law ("UCL")........................................................................2

Class Action Fairness Act of 2005 ("CAFA")....................................................................19

Fed. Civ. P.
  R. 23 .............................................................................................................................7
  R. 23(a) ......................................................................................................................7, 8
  R. 23(a)(1) .....................................................................................................................8
  R. 23(a)(2) .....................................................................................................................8
  R. 23(a)(3) .....................................................................................................................9
  R. 23(a)(4) .....................................................................................................................9
  R. 23(b)(3) ...................................................................................................................11
  R. 23(b)(3) .................................................................................................................7, 8
  R. 23(b)(3)(C) .............................................................................................................11
  R. 23(b)(3)(D) .............................................................................................................11
  R. 23(c)(2)(B) ..............................................................................................................18
  R. 23(c)(2)(B) ..............................................................................................................18
  R. 23(c)(3) ...................................................................................................................18
  R. 23(e) ..................................................................................................................12, 13
  R. 23(e)(1) ...................................................................................................................19
  R. 23(e)(1)(B) ..............................................................................................................18
  R. 23(e)(2) .....................................................................................................................7
  R. 23(g) ..........................................................................................................................9

## Secondary Authority

*Manual for Complex Litigation* § 1.46 (West 1977)................................................................7

## I.      INTRODUCTION/SUMMARY OF ARGUMENT

Plaintiff Sergio Garcia and defendant Target Corporation ("Target" and/or "Defendant") seek preliminary approval of their proposed $650,000 class action settlement (the "Settlement"). [1]  The Settlement resolves all of the claims of plaintiff, the proposed class members, and class counsel against Target based upon the factual allegations in the class action described below.

The Settlement satisfies all of the criteria for preliminary settlement approval and falls well within the range of possible approval.  Accordingly, the parties request that the Court provisionally certify the proposed class for settlement purposes only, grant preliminary approval of the Settlement, appoint the class representative, class counsel, and settlement administrator, direct the distribution to the Class of notice of the Settlement and the opportunity to object to the Settlement or elect not to participate in the Settlement, and schedule a final approval hearing.

## II.     BACKGROUND

### A.     Procedural History and the Parties' Contentions.

Plaintiff was hired by Target on June 13, 2016.  (Hawkins Decl., ¶ 2.)  After spending a month as a non-exempt Executive Team Leader in Training ("EIT") at T-2143 (Los Angeles Topanga), plaintiff transferred to T-1307 (Van Nuys), where he worked as an Executive Team Leader-Human Resources ("ETL-HR"), until May 2, 2018.  (*Id.*)

On April 17, 2019, plaintiff filed a class action complaint in Sacramento Superior Court alleging that he and other ETLs-HR and similar positions were misclassified as exempt employees and subjected to various wage-and-hour violations. The complaint alleges the following claims against Target: failure to pay all wages due; failure to provide compliant meal and rest periods; failure to reimburse business expenses, including cell phone expenses; failure to timely pay final wages; and failure provide accurate itemized wage statements.  (Hawkins Decl., ¶ 3.)  The day before the complaint was filed, plaintiff also

---

[1]      A copy of the fully executed Settlement Agreement, including its exhibits, is attached as Exhibit 1 to the Declaration of James R. Hawkins in Support of Joint Motion for Approval of Class Action Settlement; Conditional Certification of Settlement Class; Appointment of Class Representative, Class Counsel, and Settlement Administrator; Approval of Class Notice Packet; and Setting of Final Approval Hearing ("Hawkins Decl."), ¶ 13, Exh. 1.  The exhibits to the Settlement Agreement include the form of notice to the class (Settlement Agreement, Exh. A), the form of the class members' settlement information sheet (*id.*, Exh. B), the form of the class members' election not to participate in settlement (*id.*, Exh. C), and the proposed form of order granting this motion (*id.*, Exh. D).

submitted to California's Labor and Workforce Development Agency ("LWDA") notice of his claims under the California Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq*. (*Id.*, ¶ 4.)   The LWDA did not indicate within 60 days after receiving the notice that it intended to investigate the allegations.  (*Id.*)

On July 5, 2019, Target timely removed the case to this Court.  (Hawkins Decl., ¶ 5.)  Thereafter, plaintiff filed a First Amended Complaint with the Court on August 19, 2019, omitting most of the claims asserted in the original complaint. The  only claims that remain are failure to reimburse business expenses-premised on allegations that ETLs and similar positions were required to use their personal cellphones in the performance of their job duties, most notably, in downloading and using the GroupMe application to communicate with fellow team members and management—and his derivative Unfair Competition Law ("UCL") and PAGA claims.  (*Id.*)  On February 21, 2020, plaintiff filed a Second Amended Complaint ("SAC") narrowing the proposed class to only include ETLs, and dropping all other positions from the lawsuit.  (*Id.*, ¶ 6)  The operative complaint seeks certification of the following class:  All persons who are or were employed by TARGET in the state of California who occupied the position of "Executive Team Leader" within the state of California within four (4) years prior to the date this lawsuit is filed until resolution of this lawsuit.  (*Id.*, ¶ 6.)  Target denies all of the material allegations in the Action.  Specifically, Target contends, among other things, that ETLs were not required to use their personal cellphones in the performance of their job duties, as evidenced by its Bring Your Own Device ("BYOD") policy, which was in effect during all relevant times.  (Declaration of Jeffrey D. Wohl in Support of Joint Motion for Approval of Class Action Settlement; Conditional Certification of Settlement Class; Appointment of Class Representatives, Class Counsel, and Settlement Administrator; Approval of Class Notice Packet; and Setting of Final Approval Hearing ("Wohl Decl."), ¶ 4, Exh. A.)  The BYOD policy makes clear that use of a team member's own device is optional and Target has no expectation or requirement that team members use their personal cellphones in the performance of their job duties.  (*Id.*)  Target further contends that for team members who wish to use their personal devices, Target requires that they sign an acknowledgment that use of a personal mobile device, rather than a company-issued mobile device, is completely voluntary.  (*Id.*)  Even were plaintiff required to use his personal cellphone to perform his duties—which Target vigorously refutes—Target contends that it provided plaintiff with the opportunity

2

for expense reimbursement at all relevant times, via its Travel and Expense policy, which reimbursed team members "for necessary expenses incurred while on company business," including for charges made on a "personal cell phone." (*Id.*, ¶ 5.)  At the very least, the parties agree that Target's alleged liability cuts off as of December 3, 2018, when Target introduced a new stipend program for ETLs in California that provides ETLs with the opportunity to "receive a monthly stipend of up to $30 that is applied directly to their smartphone bill for work-related use of their eligible personal smartphone." (Settlement § III.I.2; Hawkins Decl., ¶ 7 Wohl Decl., ¶ 6.)  The policy allows an ETL to request additional compensation if the $30 stipend proves insufficient to cover the work-related use. (*Id.*, Exh. B.)

Target also contends that there is no basis to award penalties; that a class could not be appropriately certified in this Action; and that if a class were certified, Target's complete defenses to plaintiff's claims would be applicable to the claims of the class. (Wohl Decl., ¶ 7.)

**B.    Discovery and Investigation of Facts.**

Plaintiff's counsel have conducted significant investigation since the inception of the Action.  Their investigation included reviewing all of Target's relevant policies, procedures and practices, applicable during the class period, in regard to the claims alleged in the Action; reviewing Target's responses to special interrogatories and document requests, along with Target's corresponding document production; and retaining an economic expert to assess detailed payroll data provided by Target. (Hawkins Decl., ¶ 8)  Target also has conducted significant investigation of plaintiff's claims, including taking plaintiff's deposition, reviewing documents produced by plaintiff, and conducting an internal investigation of plaintiff's claims. (Wohl Decl., ¶ 8.)

All of this information, obtained through extensive formal discovery and informal discovery in preparation for the parties' mediation, provided the parties with a substantial basis to assess the strengths and weaknesses of their respective positions prior to the parties' mediation. (Hawkins Decl., ¶ 9; Wohl Decl., ¶ 8.)

**C.    Mediation.**

On October 20, 2020, the parties participated in a full-day private, arm's-length mediation conducted by Antonio Piazza, of Mediated Negotiations, a preeminent wage-and-hour mediator with considerable experience mediating in California. (Hawkins Decl., ¶ 11)  At the mediation, the parties

3

debated their legal positions, the likelihood of certification of plaintiff's claims, and the legal bases for the claims and defenses. (*Id.*)  At the conclusion of the mediation, the parties were too far apart to reach an agreement, but they agreed to continue settlement discussions. (*Id ¶* 12.)  Over the course of the next several months, the parties continued to engage in good-faith, arm's-length bargaining. (*Id.*)  Ultimately, in January 2021, the parties agreed to resolve this matter on a class-wide basis. (*Id.*)  The parties then continued to negotiate over the details of the Settlement during the following several months.  On April 14, 2021, the parties fully executed the Settlement Agreement that they now present to this Court for preliminary approval. (*Id.*, ¶ 13.)

**III.   SUMMARY OF THE PROPOSED SETTLEMENT**

The following is a summary of the material elements of the Settlement.

**A.   Principal Terms.**

Target will pay a total of $650,000 (the "Maximum Settlement Amount") to settle the Action on a class-wide basis for the approximately 3,800 Class Members. (Settlement, § III.A.) The class to be conditionally certified is defined as:

> "Class" means all persons who are or were employed by Target in the State of California as an Executive Team Leader ("ETL") from April 17, 2015, to December 3, 2018.  The Class does not include any individuals who already have resolved the claims asserted in the Action, whether by settlement or adjudication.

(Settlement § I.C.)

From the Maximum Settlement Amount will be paid: (i) a payment of $40,000 for PAGA penalties with 75% ($30,000) going to the LWDA for its share of the civil penalties; (ii) all Settlement Shares to be paid to all Class Members except those who elect not to participate in the Settlement (no claim forms will be required for Class Members to receive their Settlement Shares); (iii) a Class Representative Payment to the named plaintiff in the amount of $5,000 (as approved by the Court) to compensate him for his services to the Class in pursuing the Action and the risk that he assumed on behalf of the absent putative Class Members; (iv) Class Counsel's fees of $216,645 (33.3% of the Maximum Settlement Amount as approved by the Court) to compensate them for their services to the Class in prosecuting the Action and securing the Settlement, and Class Counsel's litigation expenses up to $15,000 (as approved by the Court); and (v) a payment to the Settlement Administrator for its reasonable fees and expenses incurred in administering the

Settlement, which are estimated at up to $25,000.00.  (Settlement, §§ III.A., III.B, III.C.) *None of the Maximum Settlement Amount will revert to Target.*  (Settlement, § III.E.10.) The Settlement Shares will be distributed to all Class Members who do not opt out of the Settlement as follows:

- Each Class Member's Settlement Share will equal the Net Settlement Amount times the ratio of (i) the number of workweeks worked by the Class Member for Target as an ETL in California during the Class Period to (ii) the total number of workweeks worked by all such Class Members for Target as ETLs in California during the Class Period (other than those who elected not to participate in the Settlement).

- For purposes of these calculations, a partial workweek will be rounded to the nearest whole workweek, except if a Class Member worked only a partial workweek during the applicable Class Period, the Class Member will be credited with a whole workweek.

(Settlement, § III.B.1.)  75% of each Settlement Share will be treated as a payment in settlement of the Class Member's claims for unpaid expense reimbursements; 25% of each Settlement Share will be treated as a payment in settlement of the Class Member's claims for interest and penalties. (Settlement, § III.B.2.) Because the Settlement Shares are not for claims of lost wages but instead claims for unreimbursed expenses and penalties, they will not be reduced by payroll tax withholding and deductions; instead, the Settlement Administrator will issue to the Class Member Forms 1099-INT and 1099-MISC with respect to the payment of the Settlement Shares."  (*Id.*)

In the event of a dispute over a Class Member's Settlement Share, the Settlement Administrator will resolve the dispute based on information provided by Target and the Class Member and after consultation with Class Counsel, the Class Members and Target.  (Settlement, § III.E.3.a.)

Once the judgment becomes final, Class Members who do not opt out of the Settlement will release their respective claims against Target and its related entities, under federal or California law, that were raised or that could have been raised in the Action or otherwise based on or related to the factual allegations made in the Action that Target failed to reimburse business expenses for the period from April 17, 2015, to December 3, 2018.  (Settlement, § III.F.2;)

**B.    Additional Terms.**

Within 30 days after preliminary approval of the Settlement is granted by the Court, Target will

provide the Settlement Administrator with the Class Members' Data, which includes the names and last known addresses of the Class Members, their Social Security numbers, and the number of workweeks they worked as an ETL in California from April 17, 2015, to December 3, 2018.  (Settlement, § III.E.2.a.) Within 15 days of receiving the Class Members' Data, the Settlement Administrator will send to all Class Members a Class Notice Packet, which will include a Class Notice; a Class Member Settlement Information Sheet, which will show each Class Member his or her reported number of workweeks worked as an ETL in California during the Class Period and an estimate of his or her Settlement Share; and the form of Election Not to Participate in Settlement.  (*Id.*, Exhs. A, B, C.)

The Class Notice Packet will be sent to Class Members by first-class regular U.S. mail based upon the last known addresses provided by Target, unless modified by any updated address information that the Settlement Administrator obtains in the course of administration of the Settlement.  (Settlement § III.E.2.b.) For any notices returned, the Settlement Administrator will make reasonable efforts to find corrected addresses.  (*Id.*, § III.E.2.c.)

Class Members will have 45 days after the Class Notice Packets are mailed to object to the Settlement.  (Settlement § III.E.3.b.)  If they do not wish to participate in the Settlement, Class Members will have 45 days after the Class Notice Packets are mailed to return a completed Election Not to Participate in Settlement form; those who do not timely return properly completed elections will be bound by the Settlement (and be paid their Settlement Shares).  (*Id.*, § III.E.3.c.)  If by the deadline 5% or more of all Class Members, or a number of Class Members whose Settlement Shares represent 5% or more of the Settlement Shares of all Class Members, elect not to participate in the Settlement, then Target will have the right, but not the obligation, to rescind the Settlement, which it must do within 10 days after the Settlement Administrator notifies the parties of the final number of valid Elections Not to Participate in Settlement.  (*Id.*, § III.E.4.)

Assuming that the Settlement is not rescinded, the parties will jointly move this Court for final approval of the Settlement, payment to the LWDA, and payment of the Settlement Administrator's reasonable fees and expenses.  (Settlement § III.E.6.a.)

## IV.   THE SETTLEMENT SHOULD BE GIVEN PRELIMINARY APPROVAL

The law favors settlement.  This is particularly true in class actions where substantial resources can

be conserved by avoiding the time, cost, and rigors of formal litigation. *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Judicial review of a class action settlement entails a two-step process. "The first step is a preliminary, pre-notification hearing to determine whether the proposed settlement is 'within the range of possible approval.'" *Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (quoting *Manual for Complex Litigation* § 1.46, at 53-55 (West 1977)), *overruled in irrelevant part*, *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998). The preliminary approval hearing "is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314. At this preliminary stage, "the district court must assess whether a class exists." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). In other words, the court must determine whether the lawsuit qualifies as a class action under Rule 23, Federal Rules of Civil Procedures. *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (reviewing settlement to ensure compliance with requirements of Rule 23(a) and Rule 23(b)(3)).

At the second stage of the approval process, after the court has conditionally certified the class for purposes of settlement only, notice has been provided to class members regarding the settlement, and class members have had a meaningful opportunity to object to the settlement, the court makes a final determination to ensure the settlement remains "fair, reasonable, and adequate" as required by Rule 23(e)(2). *Armstrong*, 616 F.2d at 313.

The significance of this two-step analysis is particularly acute when the parties agree to settle a class action prior to class certification. *See Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 383 (C.D. Cal. 2007) ("[C]ourts must peruse the proposed compromise to ratify both the propriety of the certification and the fairness of the settlement.") (quoting *Staton*, 327 F.3d at 952).

Courts act within their discretion in approving settlements that are fair, not collusive, and take into account "all the normal perils of litigation as well as the additional uncertainties inherent in complex class actions." *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 179-80 (5th Cir. 1979), *cert. denied sub nom. Iowa Beef Processors, Inc. v. Meat Price Investigators Ass'n*, 452 U.S. 905 (1981) (citation omitted). Where a settlement is reached on terms agreeable to all parties, a court should disapprove of the settlement "only with considerable circumspection." *Jamison v. Butcher & Sherrerd*, 68 F.R.D. 479, 481 (E.D. Pa.

1975).

### A. For Purposes of Settlement Only, Target Agrees That Plaintiff's Claims Merit Class Action Treatment.

Although Target believes that plaintiff cannot achieve class certification in a contested proceeding, it has agreed to such certification solely for purposes of this Settlement.[2]  In that regard, the parties also ask this Court to certify provisionally the class for purposes of the Settlement only.  Under the governing standards described below, the Class meets the requirements for certification under Rule 23(a) and Rule 23(b)(3) for purposes of settlement only.

### 1. Numerosity.

Rule 23(a) requires that the class be so numerous that joinder of all members be "impracticable."  Fed. R. Civ. P. 23(a)(1).  Although there is no "magic number" necessary to satisfy numerosity, and "a court must examine the specific facts of each case to determine that numerosity has been satisfied," it is generally held that "numerosity may be presumed when the class comprises forty or more members."  *Krzesniak v. Cendant Corp.*, No. C 05-05156 MEJ, 2007 U.S. Dist. LEXIS 47518, at *19 (N.D. Cal. June 20, 2007) (citing *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995)).

Here, the Class is composed of approximately 3,800 team members, all of whom are readily identifiable from the Class Members' Data.  (Hawkins Decl., ¶ 14.)  Because it would be impracticable to join such a large number of employees in a single action, the numerosity requirement is met.  (*Id.*)

### 2. Commonality.

Rule 23(a)(2) requires that there be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This commonality requirement must be "construed permissively."  *Hanlon*, 150 F.3d at 1019.  The plaintiff need not demonstrate that all questions of fact and law are common; "[t]he existence of shared legal issues with divergent factual predicates is sufficient."  *Id.*

Here, for purposes of this Settlement, the parties agree that Class Members share common legal and factual questions—*e.g.*, whether Target failed to reimburse Class Members for all necessary business expenses in violation of California Labor Code section 2802.  (Hawkins Decl. ¶ 15.)  Thus, the

---

[2]   In the event that the Settlement is not finally approved, Target reserves all rights to contest Plaintiff's right to certification of his class claims.  (*See* Settlement, § III.I.1.b.)

8

commonality requirement is met in this case.  (*Id*.)

### 3.   Typicality.

Rule 23(a)(3) requires that the representative plaintiff have claims "typical of the claims ... of the class."  Fed. R. Civ. P. 23(a)(3).  Representative claims are typical "if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. "It is enough if their situations share a 'common issue of law or fact' and are 'sufficiently parallel to insure a vigorous and full presentation of all claims for relief.'" *Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (some citation omitted) (quoting *Blackie v. Barrack*, 524 F.2d 891, 904 (9th Cir. 1975)).  Thus, the test of typicality is "'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (citation omitted) (internal quotation marks omitted).

Here, plaintiff contends that his claims arise out of the same type of factual and legal circumstances surrounding the claims of each Class Member.  (Hawkins Decl., ¶ 16.)  Specifically, plaintiff alleges that all Class Members were required to use their personal cellphones in the performance of their job duties, but that they were not reimbursed for these business expenses.  (*Id*.)  In addition, Target's primary defenses to plaintiff's claims—that plaintiff was not required to use his personal cellphones in the performance of his job duties, and that even if he were, Target provided plaintiff with the opportunity for expense reimbursement at all relevant times—are the same defenses that Target would assert to the claims of other Class Members.  (Wohl Decl., ¶¶ 4-5, 7.)  Accordingly, plaintiff contends that his claims are typical of the Class claims (Hawkins Decl., ¶ 16), and for purposes of the Settlement Target does not dispute that (Wohl Decl., ¶ 11).

### 4.   Adequate Representation.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Adequate representation turns on whether the named plaintiff and his counsel "have any conflicts of interest with other class members," and whether the named plaintiff and his counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.  In addition, Rule 23(g) directs the Court to consider counsel's work in investigating and identifying the

9

potential claims in the action, experience in handling similar class action and other matters, knowledge of the applicable law and resources that they can commit to the class, and any other pertinent matters.

Here, there are no conflicts of interest between plaintiff and Class Members. (Hawkins Decl., ¶ 17.) Moreover, plaintiff's counsel, who have substantial class action experience, including in actions alleging violations of California Labor Code section 2802, are knowledgeable about the applicable law, have diligently worked to investigate and identify the potential claims in this action, and will continue to commit their resources to further the interests of the Class. (*Id.*, ¶ 18.) Therefore, plaintiff and his counsel are adequate to represent the Class. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1162 (9th Cir. 2001) (adequacy established by mere fact that counsel were experienced practitioners).

### 5.      Predominance of Common Questions.

The predominance inquiry focuses on whether the class is "'sufficiently cohesive to warrant adjudication by representation.'" *Culinary/Bartender Trust Fund*, 244 F.3d at 1162 (citation omitted). Central to this question is "'the notion that the adjudication of common issues will help achieve judicial economy.'" *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (citation omitted), *amended*, 273 F.3d 1266 (9th Cir. 2001). Considerations of judicial economy favor litigating a predominant common issue once in a class action instead of thousands of times in separate lawsuits. "'When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis.'" *Hanlon*, 150 F.3d at 1022 (citation omitted). In addition, where determinations as to individual damages may be facilitated based on information from an employer's electronic records, the existence of such individualized issues will not defeat a predominance finding. *See Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).

Here, without waiving its opposition to class certification, should the Settlement be approved and for purposes of the Settlement only, Target agrees that the central inquiries here are whether Target violated California Labor Code section 2802. (Wohl Decl., ¶ 11.) For purposes of the Settlement only, and without waiving any of its defenses to class certification, liability, or the extent of any alleged liability, Target also agrees that information contained in its electronic records could be used to facilitate aspects of statutory

10

and civil penalty calculations.  (*Id.*)  Therefore, common questions predominate for purposes of the Settlement only.

### 6.    Superiority of Class Action.

To determine whether the superiority requirements of Rule 23(b)(3) are satisfied, a court must compare a class action with alternative methods for adjudicating the parties' claims.  Fed. R. Civ. P. 23(b)(3).  Lack of a viable alternative to a class action necessarily means that a class action satisfies the superiority requirement.  "'If a comparative evaluation of other procedures reveals no other realistic possibilities, th[e] [superiority] portion of Rule 23(b)(3) has been satisfied.'"  *Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (citation omitted) (last alteration in original); *see also Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996) ("[A] class action is the superior method for managing litigation if no realistic alternative exists.").

Here, for purposes of the Settlement only, Target does not contest that a class action would be superior because it would "'permit the plaintiff[ ] to pool claims which would be uneconomical to litigate individually.'"  (Wohl Decl., ¶ 11.)  *See Culinary/Bartender Trust Fund*, 244 F.3d at 1163 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985)).

Consideration of the factors listed in Rule 23(b)(3) bolsters this conclusion.  Ordinarily, these factors are: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the difficulties likely to be encountered in the management of a class action.  Fed. R. Civ. P. 23(b)(3).  When a court reviews a class action settlement, however, the fourth factor does not apply; in deciding whether to certify a class for purposes of settlement, a district court "need not inquire whether the case, if tried, would present intractable management problems."  *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see also Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697 (M.D. Fla. 2005) (Rule 23(b)(3)(C) and (D) factors are "'conceptually irrelevant in the context of settlement'") (citation omitted).

On balance, the remaining three factors set forth in Rule 23(b)(3) all favor class certification:

- any Class Member who wishes to pursue a separate action may submit an Election Not to

Participate in Settlement;

- the parties are unaware of any competing litigation regarding the claims at issue; and

- the parties agree that it would be desirable to resolve plaintiff's claims in this forum.

As such, certification of the Class for purposes of the Settlement only is proper. *See, e.g.*, *Elkins v. Equitable Life Ins. Co.*, No. Civ A96-296-Civ-T-17B, 1998 WL 133741, at *20 (M.D. Fla. Jan. 27, 1998) ("With the settlement in hand, the desirability of concentrating the litigation in one forum is obvious ...").

### B. The Settlement Is Fair, Adequate and Reasonable.

Although Rule 23(e) provides that a class action settlement must be approved by the Court, the rule does not provide a single criterion to aid the court in making that determination. Fed. R. Civ. P. 23(e). The Ninth Circuit, thus, has directed district courts to consider a variety of factors without providing an "exhaustive list" or suggesting which factors are most important. *See Staton*, 327 F.3d at 959. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). Due to the impossibility of predicting any litigation result with certainty, a district court's evaluation of a settlement essentially amounts to "nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (citation omitted).

The Hawkins and Wohl declarations filed with this motion demonstrate that: (i) the Settlement was the product of serious, informed, and non-collusive negotiations conducted at arm's-length and facilitated by a respected and experienced neutral mediator; (ii) the parties have engaged in formal discovery and the informal exchange of data and documents in conjunction with the mediation such that the parties and their counsel are able to make an informed recommendation about the Settlement; and (iii) the putative Class is represented by counsel experienced in wage-and-hour class actions.

Thus, the Settlement, at this time, is entitled to the presumption that it is fair and in all other respects proper, and should be preliminarily approved.

### 1. The Settlement Is the Result of Serious, Informed, Non-Collusive Negotiations.

In determining whether a class action settlement is fair, court most often look to determine whether

"class counsel adequately pursued the interests of the class as a whole." *Staton*, 327 F.3d at 961.  As the Ninth Circuit explained in *Officers for Justice*, the district court's role in evaluating a class action settlement is therefore tailored to meet that narrow objective.  Review under Rule 23(e) "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties." *Officers for Justice*, 688 F.2d at 625.  Accordingly, the Ninth Circuit will not reverse a district court's approval of a class action settlement "unless the fee and relief provisions clearly suggest the possibility that class interests gave way to self-interest." *Staton*, 327 F.3d at 961.

Here, the parties reached a non-collusive settlement after sufficient formal and informal discovery enabled plaintiff to form educated assessments about the strength of his claims, the validity of Target's defenses, and the potential value of the case.  (Hawkins Decl., ¶ 10.)  The parties were also aided in their settlement discussions by Antonio Piazza, a well-respected and experienced wage-and-hour class action mediator.  (*Id.*, ¶ 11; Wohl Decl., ¶ 9.)  The Settlement was reached as a result of the extensive arm's-length negotiations; though cordial and professional, the settlement negotiations have been adversarial and non-collusive in nature.  (Hawkins Decl., ¶ 12 Wohl Decl., ¶ 9.)  The settlement reached is the product of substantial effort by the parties and their counsel after nearly two years of litigation.  (Hawkins Decl., ¶¶ 11-13; Wohl Decl., ¶ 9.)  While plaintiff believes he has a high probability of success of certifying his claims, plaintiff also recognizes the inherent risks of litigation and understands the benefit of the Class receiving settlement funds immediately rather than risking potential unfavorable decisions on class certification, at trial, on the damages awarded, and/or on an appeal that could take several more years to litigate.  (Hawkins Decl., ¶ 19.)  Further, litigating plaintiff's claims, which involve over 3,800 Class Members during the relevant period, would have required substantial additional preparation and discovery, as well as the consideration, preparation and analysis of expert reports.  Therefore, should litigation have progressed any further, each side would have incurred significant expense.  (*Id.*, Wohl Decl., ¶ 10.)

## 2.   The Extent of Discovery and the Stage of the Proceedings Support Settlement.

In the context of class action settlements, "'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted); *see*

*also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (approving settlement where informal discovery gave parties clear view of strength and weaknesses of their cases).

Here, the parties have engaged in formal and informal discovery sufficient to allow the parties to evaluate their respective positions. (Hawkins Decl., ¶¶ 8-9.) Besides the substantial information that plaintiff himself provided to them, his counsel's investigation as to plaintiff's claims included reviewing Target's policies, procedures and practices, applicable during the class period, in regard to the claims alleged in the Action; reviewing Target's responses to special interrogatories and document requests, along with the corresponding document production; and retaining an economic expert to assess detailed payroll data provided by Target. (*Id.*, ¶ 8.) Through analysis of the information and data provided by Target, plaintiff was able to determine and formulate projected class-wide damages for use at the mediation. (*Id.*, ¶ 22.) Target, for its part, took plaintiff's deposition, reviewed documents produced by plaintiff, and conducted an internal investigation of plaintiff's claims. (Wohl Decl., ¶ 8.) Counsel for the parties further expended extensive time investigating the applicable law, which is constantly evolving as it relates to class certification, plaintiff's claims and damages, and the defenses thereto. (Hawkins Decl., ¶ 10, Wohl Decl., ¶ 8.) As such, both parties were able to adequately assess the strengths and weaknesses of their relative positions entering the mediation, and thereafter. (*Id.*)

Thus, the Settlement came only after counsel investigated the case. This litigation, therefore, has reached the stage where the parties "certainly have a clear view of the strengths and weaknesses of their cases" sufficient to support the Settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd* 798 F.2d 35 (2d Cir. 1986).

### 3.    The Parties' Counsel Are Experienced in Similar Litigation.

Both plaintiff's counsel and Target's counsel have significant experience litigating wage-and-hour class actions. (Hawkins Decl., ¶ 18; Wohl Decl., ¶ 9.) Plaintiff's counsel have represented, mediated and settled other employee class actions in wage and hour litigation and have knowledge of the strengths and weaknesses of the claims against Target and the benefits of the proposed Settlement under the circumstances of the case. (Hawkins Decl., ¶ 18)

Counsel on both sides share the view that this is a fair and reasonable settlement in light of the complexities of the Actions, the state of the law, and uncertainties of class certification. (Hawkins Decl.,

14

¶¶ 19-22; Wohl Decl., ¶. 10)  The Settlement is a compromise figure that took into account risks related to liability, damages, and all of the defenses asserted by Target.  (Hawkins Decl., ¶ 22; Wohl Decl., ¶ 10.)  Given the risks inherent in litigation and the defenses asserted, the Settlement is fair, adequate, and reasonable and in the best interests of the Class, and should be preliminarily approved.  (Hawkins Decl., ¶ 22; Wohl Decl., ¶ 10.)

Experienced counsel, operating at arm's length, have weighed the strengths of the case, examined all of the issues and risks of litigation, and endorse the proposed Settlement.  (Hawkins Decl., ¶¶ 18-22; Wohl Decl., ¶¶ 8-10.)  The view of the attorneys actively conducting the litigation "is entitled to significant weight" in deciding whether to approve the settlement.  *Fisher Bros. v. Cambridge-Lee Indus, Inc.*, 630 F. Supp. 482, 488 (E.D. Pa. 1985); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), *aff'd*, 661 F.2d 939 (9th Cir. 1981); *Boyd v. Bechtel Corp.,* 485 F. Supp. 610, 616-17 (N.D. Cal. 1979).

### 4.     The Settlement Is Fair and Reasonable Based on the Risks and Costs of Further Litigation.

To assess the fairness, adequacy, and reasonableness of a class action settlement, the Court also must weigh the immediacy and certainty of substantial settlement proceeds against the risks inherent in continued litigation.  *See In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995) ("[T]he present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.") (citation omitted) (internal quotation marks omitted); *Boyd v. Bechtel Corp*., 485 F. Supp. 610, 617 (N.D. Cal. 1979).

There are significant legal uncertainties associated with cases such as this, as they can require protracted litigation to resolve.  Specifically, whether Class Members were required to use their cellphones to perform their job duties is a hotly contested issue in this litigation that may have required individualized inquiries—courts have gone both ways on this issue.  *Compare, e.g., Castro v. ABM Indus., Inc.*, 325 F.R.D. 332 (N.D. Cal. 2018) (certifying 2802 class that alleged they were required to use their personal cellphones in the performance of their job duties; whether expenses were necessary can be answered through common proof), *with*, *e.g. Uschold v. Carriage Servs., Inc.*, 2020 WL 1466172, at *11 (N.D. Cal. Mar. 6, 2020) (denying class certification, in part because the proposed class would require the court "to determine whether the expenses incurred by class members are reasonable and necessary under section

15

2802. This improperly requires the Court to decide the merits of the case in order to solidify class membership."). As such, while plaintiff believes that his claims are amenable to class treatment for purposes other than settlement, Target would have vigorously opposed a contested motion for class certification on the grounds that resolution of plaintiff's claims would have required highly individualized analysis of the facts and circumstances of each Class Member's employment. (Hawkins Decl., ¶ 20; Wohl Decl., ¶ 11.) This risk is heightened by the fact that both parties would have been forced to engage in additional and protracted discovery, would need to take further depositions, and would have needed to conduct additional fact investigations in order to gather further evidence in support of their positions at certification. (Hawkins Decl., ¶ 21; Wohl Decl., ¶¶ 10-11.) Decertification motions and reversals following trial are also a legitimate risk in light of the U.S. Supreme Court decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011).

There also is a significant risk that Target could have obtained summary judgment as to plaintiff's claims. (Hawkins Decl., ¶ 22.) Under California law, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties." Cal. Lab. Code § 2802. Target had in place a BYOD policy during all relevant times providing plaintiff (and other team members) the option to use his personal cellphone in the performance of his job duties, but making clear that such usage was voluntary—which, in Target's opinion, negates an essential element of section 2802. (Wohl Decl., ¶ 4.) Moreover, Target contends that it had in place policies that provided plaintiff with the opportunity to seek reimbursement for any necessary expenses he incurred while on company business, including expenses incurred via his cellphone—which, Target contends, fulfilled its obligation, if any, to provide expense reimbursement. (*Id*.)

These uncertainties bore heavily on the negotiations leading to the Settlement. In the face of these legal uncertainties, the parties agreed to a compromise settlement. A settlement is not judged *solely* against what might have been recovered had a plaintiff prevailed at trial, nor does a settlement have to provide 100% of the damages sought to be fair and reasonable. *See Officers for Justice*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not ... render the settlement inadequate or unfair.").

Thus, the Settlement affords Class Members prompt and substantial relief, while avoiding the

16

significant legal and factual hurdles which could have potentially prevented the Class from obtaining any recovery at all, or resulted in only a minimal recovery for the Class.  (Hawkins Decl., ¶ 19.)  *See, e.g.*, *Brown v. Federal Express Corp.*, 249 F.R.D. 580 (C.D. Cal. 2008); *Perez v. Safety-Kleen Sys., Inc.*, 253 F.R.D. 508, 515 (N.D. Cal. 2008); *Salazar v. Avis Budget Group, Inc.*, 251 F.R.D. 529 (S.D. Cal. 2008); *Blackwell v. Skywest Airlines, Inc.*, 245 F.R.D. 453, 468 (S.D. Cal. 2007); *Kohler v. Hyatt Corp.*, No. EDCV 07-782-VAP (CWx), 2008 U.S. Dist. LEXIS 63392, at *19 (C.D. Cal. July 23, 2008); *Watson-Smith v. Spherion Pac. Workforce LLC*, No. C 07-05774 JSW, 2008 U.S. Dist. LEXIS 106147, at *8 (N.D. Cal. Dec. 12, 2008).  Accordingly, the considerable risks discussed above support the fairness, adequacy, and reasonableness of the Settlement the parties reached through arm's length negotiations.

### 5.      The Amount Offered in the Settlement Supports Approval.

The Settlement's adequacy must be judged as "'a yielding of absolutes and an abandoning of highest hopes' …  Naturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation. ..."  *Officers for Justice*, 688 F.2d at 624 (citations omitted).

Here, Target has agreed to pay $650,000.00 to settle this lawsuit.  Plaintiff estimates that total damages in this case, excluding attorneys' fees and costs, would have been approximately $2,400,000, assuming a $30/month stipend—the same amount Target now provides to its ETLs as a matter of course to cover their cost of their business-related cellphone usage.  Considering the potential recovery *vis-à-vis* the inherent risks of further litigation, including the possibility that Target would prevail on a motion for summary judgment or that no Class would be certified in this action, the amount of the Settlement is well within the range of reasonableness.  (Hawkins Decl., ¶ 22.)

### 6.      The Fairness of the Distribution Supports Approval.

Finally, the parties believe that the total Settlement is fair to the Class because Class Members are treated fairly relatively to each other.  *See Holmes v. Continental Can Co.*, 706 F.2d 1144, 1148 (11th Cir. 1983) (noting that relative differences in treatment of class members must be "rationally based on legitimate considerations").

Here, the Settlement provides for Settlement Shares that are directly tied to the number of workweeks each Participating Class Member works as an ETL in California during the relevant time

17

period.  (*See* Settlement, § III.B.1.)  Therefore, the Settlement equitably distributes Settlement Shares between Class Members in a manner rationally tied to each Class Member's time worked in the ETL position in California.

### C.      The Form and Manner of Notice of the Settlement Complies with Rule 23.

If a court conditionally certifies a settlement class and preliminarily approves the settlement, the "best notice practicable" under the circumstances must be directed to the members of the settlement class. Fed. R. Civ. P. 23(c)(2)(B), 23(e)(1)(B).  Rule 23(c)(2)(B) does not require "actual notice" or that a notice be "actually received."  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).  Rather, notice only need be given in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

As outlined in the Settlement Agreement, the parties have agreed to have the Settlement Administrator send the Class Notice Packets to all identified Class Members via first-class regular U.S. Mail using the mailing address information provided by Target.  (Settlement, § III.E.2.b.)  If a Class Notice Packet is returned because of an incorrect address, the Settlement Administrator will search for a more current address for the Class Member and re-mail the Class Notice Packet within 15 days from receipt of the returned packet.  (*Id.*, § III.E.2.c.)  Notice by this method clearly suffices.

Apart from the manner of notice, Rule 23(c)(2)(B) also sets forth requirements regarding the content of the notice.  The notice must concisely and clearly state in plain, easily understood language: the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that class members may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on class members under Rule 23(c)(3).

Here, the Notice of Proposed Class Action Settlement and Final Approval Hearing (Settlement, Exh. A) contained in the Class Notice Packet fully complies with Rule 23(c)(2)(B).  Courts routinely have approved class notices that have provided less information about the settlement than is contained here.  *See, e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very general description of the proposed settlement" sufficient), *disapproved on other grounds by Evans v. Jeff D.*, 475 U.S. 717 (1986);

*In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (notice "need only describe the terms of the settlement generally"). The class notice as drafted by the parties also provides more than adequate notice about the Settlement. In addition, accompanying the class notice will be a Class Member Settlement Information Sheet (Settlement, Exh. B) and an Election Not to Participate in Settlement form (*id.*, Exh. C). Class Members thus will be provided with all of the information they need to make informed decisions as to whether to be part of the Settlement.[3]

## V.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING

The last step in the settlement approval process is the final approval hearing, where Class Members who timely submit objections to the Settlement may be heard and the Court makes a final determination about the propriety of the settlement. Fed. R. Civ. P. 23(e)(1). The parties respectfully request that the final approval hearing in this case be scheduled on or after February 17, 2022, consistent with the following proposed settlement timeline:

| Date | Event |
|---|---|
| September 30, 2021 | Court grants preliminary approval |
| November 1, 2021 | Last day for Target to provide Settlement Administrator with class data (30 days after preliminary approval order; October 30, 2021, is a Saturday) |
| November 16, 2021 | Last day for Settlement Administrator to mail out to Class Members Class Notice Packets (15 days after Target provides class data to Settlement Administrator) |
| December 31, 2021 | Last day for Class Members to dispute information on Class Member Settlement Information Sheets (45 days after Class Notice is mailed)<br><br>Last day for Class Members to file objections to Settlement (45 days after Class Notice is mailed)<br><br>Last day for Class Members to mail Election Not to Participate in Settlement to Settlement Administrator (45 days after Class Notice is mailed) |
| January 7, 2021 | Last day for Settlement Administrator to provide the parties with a complete and accurate list of all Class Members who submitted timely and valid Elections Not to Participate (7 days after the deadline for submission of Elections Not to Participate in Settlement) |
| January 17, 2021 | Last day for Target to exercise right to rescind Settlement (if applicable) (10 days after the Settlement administrator reports to parties on Class |

_____

[3]      Pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715 ("CAFA"), after filing this motion for preliminary approval, Target will give the required notice of the Settlement to the Attorney General of the United States and the appropriate officials of the states where Class Members are known to reside (Settlement, §§ III.E.1.C., Exh. F), and will file a declaration of compliance with CAFA prior to the hearing on the motion. Further, pursuant to PAGA, concurrently with filing this motion for preliminary approval, Target will submit to the LWDA the PAGA Notice enclosing the Settlement Agreement. (Settlement, §§ III.E.1.B., Exh. E.)

19

| **Date** | **Event** |
|----------|-----------|
| | Members who have elected not to participate in Settlement) |
| January 13, 2022 | Last day for Settlement Administrator to provide the parties with a declaration of due diligence setting forth its compliance with its obligations under the Agreement and information regarding claims submissions (35 days before the Final Approval hearing) |
| January 20, 2022 | Last day for parties to jointly file with the Court a motion for a final approval of the Settlement, the LWDA payment, payment of the Settlement Administrator's fees and expenses, and for awards of the Class Representative Payments and the Class Counsel Fees and Expenses Payment (28 days before the Final Approval Hearing) |
| January 27, 2022 | Last day for any Class Member who wishes to object to the requests for the Class Representative Payment or the Class Counsel Fees and Expenses Payment to file any such objection (21 days before the Final Approval Hearing) |
| February 17, 2022 | Final approval hearing |
| *(All dates that follow assume final approval granted and noticed on* February 17, 2022) | |
| 10 days after the later of (i) the Judgment becoming Final and (ii) the Action being dismissed by the District Court with prejudice pursuant to the parties' stipulation. | Last day for Target to pay to the Settlement Administrator the Maximum Settlement Amount |
| 7 days after the Settlement Administrator receives the Maximum Settlement Amount | Settlement Administrator to pay to Class Members the Settlement Shares; to plaintiff, the Class Representative Payment; to Class Counsel, the Class Counsel Fees and Expenses Payment; to the LWDA, the LWDA Payment; and to the Settlement Administrator, its reasonable fees and expenses |

## VI.   CONCLUSION

The parties submit that the Settlement is in the best interests of plaintiff and the putative class, and respectfully request that this Court:  (1) preliminarily approve the Settlement; (2) conditionally certify a settlement class; (3) appoint plaintiff as the Class Representative, his counsel as Class Counsel, and Simpluris as Settlement Administrator; (4) approve the forms of notice to the Class of the settlement, the Class Member Information Sheet, and the Election Not to Participate in the Settlement; and (5) schedule a hearing on the final approval of the Settlement for February 17, 2022, or the next date available to the Court.

//

//

1      Dated:  August 9,  2021.          JAMES R. HAWKINS
ISANDRA FERNANDEZ
2                                            JAMES HAWKINS APLC

3

By: ___*/s/ Isandra Fernandez*_____

4                                              Isandra Fernandez
Attorneys for Plaintiff
5                                                Sergio Garcia

6      Dated:  August 9, 2021.           JEFFREY D. WOHL
ERIC D. DISTELBURGER
7                                            PAUL HASTINGS LLP

8

By: ___*/s/ Jeffrey D. Wohl*_____

9                                              Jeffrey D. Wohl
Attorneys for Defendant
10                                          Target Corporation

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM ISO MOTION FOR PRELIMINARY
APPROVAL OF CLASS SETTLEMENT
U.S.D.C., E.D. Cal., No. 2:19-CV-01249-TLN-DB