JEFFREY D. WOHL (Cal. State Bar No. 096838)
ERIC D. DISTELBURGER (Cal. State Bar No. 330042)
PAUL HASTINGS LLP
101 California Street, 48th Floor
San Francisco, California 94111
Telephone: (415) 856-7000
Facsimile: (415) 856-7100
jeffwohl@paulhastings.com
ericdistelburger@paulhastings.com

Attorneys for Defendant
Target Corporation

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO GARCIA, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TARGET CORPORATION, a Minnesota corporation, and DOES 1 through 50, inclusive,<br><br>Defendants. | No. 2:19-CV-01249-TLN-DB<br><br>**DECLARATION OF JEFFREY D. WOHL IN SUPPORT OF JOINT MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, CONDITIONAL CERTIFICATION OF CLASS, APPOINTMENT OF CLASS REPRESENTATIVE, CLASS COUNSEL, AND SETTLEMENT ADMINISTRATOR, APPROVAL OF CLASS NOTICE, AND SETTING OF FINAL APPROVAL HEARING**<br><br>Date: September 30, 2021<br>Time: 2:00 p.m.<br>Courtroom: 2<br>Judge: Hon. Troy L. Nunley<br><br>SAC Filed: February 21, 2020<br>Trial Date: None set |

I, Jeffrey D. Wohl, declare:

1. I am a member of the State Bar of California, a partner with Paul Hastings LLP, and one of the attorneys representing defendant Target Corporation ("Target") in this action. I make this declaration in support of the parties' joint motion for conditional certification of a settlement class in this action, preliminary approval of the parties' proposed settlement, approval of the Class Notice Packet, appointing a Class Representative, Class Counsel and the proposed Settlement Administrator, and the setting of a date for the hearing on final approval of the settlement (the "Settlement"). I have personal knowledge of the facts set forth in this declaration, or am informed and believe they are true.

2. The operative complaint in this action is plaintiff's Second Amended Complaint ("SAC"), filed on February 21, 2020.

3. The SAC alleges that Target failed to reimburse putative class members for business expenses, premised on plaintiff's allegation that Target Executive Team Leaders ("ETLs") were required to use their personal cellphones in the performance of their job duties, most notably, in downloading and using the GroupMe application to communicate with fellow team members and management. The SAC also asserts derivative claims under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200, and Labor Code Private Attorneys General Act ("PAGA"), Cal. Lab. Code § 2698 *et seq*.

4. Target denies all of plaintiff's material allegations in this action. Target contends, among other things, that ETLs were not required to use their personal cellphones in the performance of their job duties, as evidenced by its Bring Your Own Device ("BYOD") policy, which was in effect during all relevant times. The BYOD policy makes clear that use of a team member's own device is optional and Target has no expectation or requirement that team members use their personal cellphones in the performance of their job duties. Target further contends that for team members who wish to use their personal devices, Target requires that they sign an acknowledgment that use of a personal mobile device, rather than a company-issued mobile device, is completely voluntary. A true and correct copy of Target's BYOD policy and team member acknowledgement is attached as Exhibit A to this declaration.

5. Even were plaintiff (or other ETLs) required to use his personal cellphone to perform his duties—which Target vigorously refutes—Target contends that it provided plaintiff with the opportunity for expense reimbursement at all relevant times, via its Travel and Expense policy, which reimbursed team

members "for necessary expenses incurred while on company business," including for charges made on a "personal cell phone."

6. At the very least, the parties agree that Target's alleged liability cuts off as of December 3, 2018, when Target introduced a new stipend program for ETLs in California that provides ETLs with the opportunity to "receive a monthly stipend of up to $30 that is applied directly to their smartphone bill for work-related use of their eligible personal smartphone." The policy allows the ETL to request additional compensation if the $30 stipend proves insufficient to cover the work-related use. A true and correct copy of Target's ETL stipend policy is attached as Exhibit B to this declaration.

7. Target also contends that there is no basis to award penalties; that a class could not be appropriately certified in this Action; and that if a class were certified, Target's defenses to plaintiff's claims would be applicable to the claims of the class.

8. Target has conducted significant investigation of plaintiff's claims in this action, including taking plaintiff's deposition, reviewing documents produced by plaintiff, and conducting an internal investigation of plaintiff's claims. All of this information, obtained through extensive formal discovery and informal discovery in preparation for the parties' mediation, provided Target with a substantial basis to assess the strengths and weaknesses of its positions prior to the parties' mediation. In addition, Target expended extensive time investigating the applicable law, which is constantly evolving as it relates to class certification, plaintiff's claims and damages, and the defenses thereto.

9. The parties reached the Settlement following arm's-length bargaining with experienced wage-and-hour attorneys on both sides. Paul Hastings LLP and I personally have extensive experience in litigating wage-and-hour actions, like this one. I have been a partner at Paul Hastings LLP since 2003, practicing exclusively in employment law with a strong emphasis on wage-and-hour class and representative actions. I joined the firm after more than 21 years at another major law firm in San Francisco, where I was a partner and also practiced exclusively in employment law, including class and representative action litigation. The Settlement was the product of serious, informed, and non-collusive negotiations conducted at arm's-length and facilitated by a respected and experienced neutral mediator, Antonio Piazza. The Settlement reached is the product of substantial effort by the parties and their counsel after nearly two years of litigation.

10. The Settlement is a compromise figure that took into account risks related to liability, damages, and all of the defenses asserted by Target. The Settlement is fair and reasonable, and avoids the risks of proceeding through trial; should litigation have progressed any further, Target would have incurred significant expense.

11. For purposes of this Settlement only, (i) Target does not dispute plaintiff's contention that his claims are typical of the Class claims; (ii) Target agrees that a central issue in the action is whether Target violated California Labor Code section 2802; and (iii) Target does not oppose certification of a class for purposes of settlement only. Had this action continued, Target would have vigorously opposed a contested motion for class certification on the grounds that resolution of plaintiff's claims would have required highly individualized analysis of the facts and circumstances of each putative class member's employment.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on August 9, 2021, at Hillsborough, California.

                                                 */s/ Jeffrey D. Wohl*
                                                     Jeffrey D. Wohl

# Exhibit A



# Bring Your Own Device
## BEST PRACTICE

# Overview

For team members' ease and convenience, and to help team members provide Fast, Fun and Friendly guest service, team members are permitted to use their personal devices, PDA, or a Target I-Touch device (arriving in stores throughout 2014.) This entirely voluntary opportunity gives team members one more way to create amazing moments through the convenience of their personal smart device(s) or Target I-Touch device(s).

# How it Works

Beginning April 1, the Bring Your Own Device Policy will be implemented, which will provide team members the option to carry their personal smart device, PDA, or a Target I-Touch device (arriving in stores throughout 2014) on the sales floor to help assist guests.

- This includes personal portable devices (i.e. iPod, iPhone, Android device, etc.) that are able to connect to Target Wi-Fi. In addition, PDAs and/or Target I-Touch devices will be available for team members to check out and use throughout the workday. The team members will return the PDA and/or Target I-Touch device at the end of their shift.
- It is optional for a team member to use a personal device or a Target I-Touch device in order to provide amazing guest service and Target is not requiring that any team member do so.
- This policy change supports our Multichannel strategy by giving team members the option to create amazing moments by connecting guests to product information online via their personal device.
- Using a personal device or Target I-Touch device may assist the team member to:
    - Share more information about Target's digital resources.
    - Use the Target app to find product information and reviews.
    - Find an out-of-stock item at another Target store.
    - Use Cartwheel to help guests find more ways to save.
- **CA Only:** Team members who want to participate in the personal device program must sign and return the Target "Bring Your Own Device Policy" – Team Member Acknowledgement.
    - Team members should see their ETL-HR during Open Door time between April 1 and May 17 to learn about the policy, schedule training on the Target App, and sign the Target "Bring Your Own Device Policy" – Team Member Acknowledgement.
    - Fax the completed Target "Bring Your Own Device Policy" – Team Member Acknowledgement forms to HROC.

1

# Guidelines

The Bring Your Own Device Policy is optional and in no way an expectation or requirement of team members. Team members can choose to opt in, or not to participate, the choice is theirs.

- Due to the voluntary nature of this policy, leaders should not require team members to use their personal devices or Target I-Touch devices to help provide guest service.
- If you suspect a team member is using his/her personal device or Target I-Touch device for personal use while on the clock (other than for emergencies), you may discontinue the privilege and prohibit the team member from using their personal device or Target I-Touch device while on the clock. If the problem continues, partner with HR to determine the appropriate course of action.

| Do | Don't |
| --- | --- |
| Connect to Guest Wi-Fi before attempting to assist a guest | Share personal information with guests |
| Assist guests in learning about all of Target's digital Resources | Use your personal device or Target I-Touch device for taking videos and/or photos, texting, email, social media or other personal use while on the clock |
| Help answer guests' questions | Let a guest handle your personal device or Target I-Touch device |
| Help guests find online product reviews | Take a guest's personal information on your personal device or Target I-Touch device (e.g. name, phone #, address, credit card #, etc.) |
| Use Target Mobile app to find out-of-stock items at another Target store | Work off the clock |
| Help guests find items in your store | Handle a guest's personal device |

# Communicating to Your Team

The option to use a personal device or a Target I-Touch device as part of the BYOD policy should be communicated in a way that conveys excitement about our Multichannel strategy and the convenience this option provides team members, but should not be communicated as a requirement or expectation of any team member. Team members should also clearly understand that their performance will not be reviewed based upon their choice to participate or not participate (i.e., team members who opt in and create amazing moments using their devices should not be assessed or recognized any differently than those who choose not to participate).

- Use huddles to communicate information regarding the Bring Your Own Device Policy to your team. Share the information in the "Overview," "How it Works," and "Guidelines" sections of this guide (including the "dos" and "don'ts").
- Share one guest service scenario at each huddle to give team members a better understanding of how they can use their personal device or a Target I-Touch device to assist guests.
- Continue to ask team members for feedback on the Bring Your Own Device Policy and specifically, how the use of their personal device has impacted their ability to create amazing moments for guests. Also recognize amazing moments created without the use of smart devices. And encourage team members to share feedback individually with their leader at any time.

# Training

Information on how to use the Target App can be found on Workbench | Tools | Applications and Technology| Target App

## Scenarios in Which Devices May be Used

**Scenario One:** Guest is shopping for Simply Balanced items but is unaware of how items can be used in a recipe.
  Team Member: Log onto www.target.com/simplybalanced on your personal device or a Target I-Touch device to find the recipe(s) with the guest(s). Once a specific recipe is found, assist the guest further by helping to locate each of the needed ingredients so the guest has everything they need for their meal.

**Scenario Two:** Guest is searching for a movie but does not know which movie they want to buy.
  Team Member: Use your personal device or a Target I-Touch device to search for reviews on genres of recent movies that the guest is interested in. Compare the review and share your own movie experiences with the guest. If the guest is still unsure of which movie they are interested in purchasing, suggest they search online and utilize other applications for movie reviews.

**Scenario Three:** A guest saw an item in the weekly ad and cannot remember the promotional price and the exact item she reviewed.
  Team Member: Use your personal device or a Target I-Touch device to open the Target mobile App and tap on the "Weekly Ad" to pull up the full weekly ad in order to help the guest find the specific item she came in the store to purchase.

**Scenario Four:** Guest likes a shirt but wants it in a different size that is not at your store.
  Team Member: Use your personal device or a Target I-Touch device to search DPCI on Target.com and find the correct size in another store or assist the guest with their order on Target.com, which will deliver the item directly to their home (additionally, if they have a Target REDCard they will get 5% off and get free shipping to their home.)

3

**Scenario Five:** Guest is interested in purchasing new items for their kitchen.

> Team Member: While assisting the guest, ask it they have used the cartwheel app. If the guest is unfamiliar, open the cartwheel app that is downloaded on your personal device or Target I-Touch device and demonstrate great ways to use cartwheel to ensure the guest is able to save on their new purchase. If the guest does not have the app, go the extra inch and walk the guest through the steps to download and use the app.

# Support

- For issues with your personal device, partner with your service provider.
- For issues with your Target I-Touch device, contact CSC.

# FAQs

**Q. If I choose to participate in this program, what is considered an acceptable device (iPhones/Android phones only? iPods? iPads?)?**

A.   Any portable smart device that can connect to the guest Wi-Fi and would assist you to more easily perform your duties as a team member (some examples include: iPods, iPhones, and Android phones). Remember, the purpose of the program is to make your job easier. In addition, team members always have the option to use a PDA, Target I-Touch device, or no device at all.

**Q. Do I need a personal device or a Target I-Touch device to provide amazing guest service?**

A.  No. Target provides you with all of the tools (walkies, PDAs, etc.) and resources you need to do your job. Target is merely providing this option for the ease and convenience of team members.

**Q. If I have an approved device, am I required to participate?**

A. No. This policy is entirely voluntary. Team members are not required to use their device or a Target I-Touch device to provide excellent guest service, and Target is not requesting that team members do so.

**Q. If I do not have an approved device or prefer not to use my personal device, but would like to participate, will Target provide a device for me?**

A.  Yes. If you would like to participate, but you do not have an approved device or prefer not to use your personal device, Target will provide you with a PDA or a Target I-Touch device. The Target I-Touch device is fully supported by Target.

4

**Q. Will I have the ability to recharge my device or Target I-Touch device while at work?**
A. You are able to charge your device with your personal charger but please ensure your device is not left unattended. You are able to charge Target I-Touch devices using chargers that Target will provide.

**Q. What if another team member asks to use my device or Target I-Touch device to assist a guest?**
A. You are responsible for your own device and should refrain from loaning it to other team members. Other team members may temporarily use your Target I-Touch device to assist a guest, if they choose to. The team member should return the Target I-Touch device to you when he or she is finished assisting the guest.

**Q. What happens if my device is damaged, lost or stolen while using it at work?**
A. As with any other personal device in the store, you will want to partner with AP to fill out an incident report. Target is not liable for any lost or stolen goods/devices.

**Q. What should I do if I forget to or cannot connect to Target Wi-Fi but would like to assist a guest using my personal device? Will Target reimburse me for data charges or other costs?**
A. Target will not reimburse you for data charges or costs incurred while participating in this voluntary program. Please ensure you are connected to Target Wi-Fi before attempting to assist a guest. Target does not expect you, nor is it authorizing you, to incur data charges or costs to participate in this program. Again, participation in the program is your choice. If you are concerned that using your device will cause you to incur unwanted charges or expenses, you should feel free to use a PDA, Target I-Touch device, or no device at all. Again, the choice is yours.

**Q. If I choose to participate, which applications should I use to assist guests? Which applications (if any) should I avoid using?**
A. Apps that make your job easier and help you answer a guest's question(s) without exposing personal information can be used. Examples include the Target Mobile app and Cartwheel. Any app that has the potential to expose personal team member information to the guest or requires the guest to share personal information should not be accessed during work. Examples include Facebook, Twitter and Instagram.

**Q. Is there training available to help me understand how to use my device or a Target I-Touch device to assist a guest?**
A. Reference the "Guest Assistance Scenarios" section of this document for ideas on how to assist guests with devices. You can also use the workbench link above for training on how to use the Target Mobile App more effectively.

**Q. (Leaders only) How do I address a team member if I suspect they are using their personal device or Target I-Touch device for personal use?**
A. Team members' participation in this program is a privilege and can be ended. This means if you suspect a team member is using his/her phone for personal use while on the clock (other than for emergencies), you may discontinue the privilege and prohibit the team member from using their phone while at work on the clock. Furthermore, if you believe a team member has engaged in any inappropriate conduct or work performance that does not meet Company expectations, partner with HR to determine whether any disciplinary action is appropriate.

5

**Q. If I choose to use a personal device, does it matter what kind of personal device I use?**
A. No, as long as it's portable and you are able to continue to execute your daily duties. We recommend smaller items such as iPods, iPhones, and other smart phones, and not using iPads or other tablets as they are bulkier and not as portable. You should only be using personal devices that are able to connect to guest Wi-Fi and enable you to assist guests.

# HR Specific FAQs

**Q. How do I, or another store leader, address a team member if I suspect they are using their device or a Target I-Touch device for personal use?**
A. If you suspect a team member is using either device for personal use while working on the clock, have a coaching conversation with the team member and review the "dos" and "don'ts" list to ensure they understand the distinction between acceptable usage to support service at work and inappropriate personal use. Remind the team member that use of their personal device is a privilege than can be revoked if the team member uses the device for personal use while on the clock. It may take more than one conversation with a team member for them to fully understand what is and is not allowed under this policy change. Work with your HR partner for any concerns related to this that arise.

**Q. What if a team member continues to use the device for personal use even after being reminded of the policy?**
A. If a team member continues to use the device for personal use while on the clock, even after they have been reminded of the policy, the privilege of using their personal device should be revoked for this team member. Inform the team member they are no longer allowed to use their personal device while working on the clock and suggest that they leave their device in their locker, at home, or in another secure location while at work.

**Q. What if a team member uses their device while on the clock (for personal or guest service purposes) after the privilege has been revoked?**
A. If a team member continues to use their device while on the clock, even after the privilege has been revoked, formal corrective action may be appropriate. Several current CCA policies may be relevant and could be leveraged. Partner with your HRBP if you are unsure about corrective action as a next step.

**Q. Should a team member's personal device privileges ever be reinstated after they have been revoked?**
A. As a leader, it is up to you to use your best judgment when deciding whether or not to allow a team member to resume using their personal device. If a team member is allowed to participate again after having their privileges revoked, ensure they fully understand the "dos" and "don'ts" and make it clear that further misuse of the device could lead to additional disciplinary action.

  

Team Member #: ☐☐☐☐☐☐☐☐☐

**Target "Bring Your Own Device Policy" – Team Member Acknowledgement**

      By my signature below, I acknowledge receipt of Target's "Bring Your Own Device Policy" and agree to abide by its terms. I understand that if I elect to use a personal mobile device instead of a company-issued device for Target business, I am solely responsible for maintaining the device according to this policy. I certify that I have a data plan that will allow me to use my personal mobile device while working at Target without incurring additional data charges, and I agree that Target is not responsible for any costs associated with my use of a personal mobile device. Further, I acknowledge that my use of a personal mobile device, rather than a company-issued mobile device such as a Target I-Touch, is completely voluntary. Even if I own a personal mobile device or there are company-issued mobile devices available for me to use, I am not required to use either—the choice is mine. If at any time I wish to discontinue my use of my personal mobile device for Target business, it is my responsibility to notify Human Resources.

_____ \_\_\_

Team Member Signature                                         Date

_____

Team Member Name (Printed)

# Exhibit B

# California ETL Stipend Program 

The **California ETL Stipend Program** provides a monthly reimbursement to California ETLs for work-related use of their eligible personal smartphone when they choose not to use a Target-supplied device.

## Overview

ETLs in California can receive a monthly stipend of up to $30 that is applied directly to their smartphone bill for work-related use of their eligible personal smartphone when they choose not to use a Target-supplied device.

The California ETL Stipend Program is intended to cover the work-related use of the ETL's eligible personal smartphone; it is **not** intended to cover the full cost of the smartphone. If the ETL believes the stipend is not sufficient to cover the work-related use, they should partner with their leader and submit a request for an additional amount through the normal Travel and Expense process.

## Eligible Smartphones and Carriers

- The California ETL Stipend Program applies to an iOS (Apple) or Android smartphone.  Windows, Blackberry, etc. do **not** qualify because they do not have Target Mobile Workspace capability, which is required.
- Devices that have been rooted or jailbroken, have an unlocked bootloader, or have an enabled iCloud keychain are ineligible due to security risk.
- ETLs must have an account with one of the four main carriers (*AT&T, Verizon, T-Mobile, or Sprint*) to participate. ETLs may participate if the smartphone is part of a family mobile plan.
- If choosing a new carrier, note that ETLs may qualify for a discount as a Target team member; check the team member benefits for details.

## How to Participate in the California ETL Stipend Program

- Verify that your personal smartphone qualifies, given the device and carrier requirements (see above).
- Install Target Mobile Workspace on your iOS/Android smartphone by following the instructions on the Target Mobile Workspace wiki page.
  - If you experience technical difficulties with Target Mobile Workspace installation, call the CSC help desk for assistance.
  - If your smartphone is found to be non-compliant with Target Mobile Workspace, you will **not** be eligible for a monthly stipend.
- Sign up for the California ETL Stipend Program.
  - Click on this link. Click **Create an Order For** and select your name on the list. Click **New Order** and select **Begin Plan Participation**. You will be asked to provide the following information for your personal smartphone:
    - Carrier
    - Carrier account number
    - Verify carrier account number
    - Smartphone wireless number

© Target Brands, Inc. This document and the contents within are the property of Target Corporation and its subsidiaries (collectively "Target"). They are for the sole use of designated employees of Target as well as certain authorized business partners and shall not be reproduced, disseminated, or disclosed in any form to any party whatsoever without the express written consent of Target.

- ○ Confirm that your bill is greater than the amount shown for your stipend. If your bill is *less* than the stipend amount, you must enter the lower amount as your stipend. Click the "Submit" button.
- You will experience a pause in the process until your leader approves this request. Therefore, it is recommended that you reach out to your leader directly to tell them to expect an email from do- not-reply@dimensiondata.com and take action in a timely manner (it may look like SPAM to your leader). **Your leader must approve your request before you begin receiving your monthly stipend.**

## Payment Details

- Once your request has been approved in the Dimension Data system by your leader or other appropriate approver, it can take up to eight weeks for the first stipend to appear on your monthly carrier bill.
- After the first stipend is paid, subsequent stipends automatically will be applied to your monthly carrier bill near the end of each calendar month (unless your smartphone has been removed from eligibility).
  - ○ Stipends do not necessarily align to your personal billing cycle, so you may not see the month's stipend on your monthly carrier bill. However, you *should* see the stipend when you log into your online smartphone account. **Before contacting Mobile.Reimbursement about payment concerns, check your online smartphone account and verify that the stipend has not been applied.**
- You are responsible for meeting the payment terms associated with your smartphone service, regardless of when payments are posted.
- If you receive any amount of stipend above and beyond the cost of your monthly carrier bill, you must return the excess payment to Target by contacting the Human Resources Operations Center (HROC).
- If you repeatedly receive any amount of stipend above and beyond the cost of your monthly carrier bill, you must go into the Dimension Data system and update your stipend amount to be no greater than your monthly carrier bill. Follow instructions listed under 'How to Update an Existing (Active) Enrollment' section.
- Target is not responsible for costs associated with damaged, lost or stolen phones.

## How to Update an Existing (Active) Enrollment

If you need to change the stipend amount, follow these instructions:

- Go to the NexTEM
- Click **Create an Order For** and select your name on the list
- Click **New Order** and select **Change Plan Participation**
- Select radio button of '<$50.00' to enter the amount and then click **Next**
- Review the Order Summary to the right then click on **Finish** to submit

If you make *any* changes to your carrier account (i.e., change carriers, account numbers, phone numbers, device, etc.) you must terminate the plan first *and* then create a new plan to ensure you do not miss a stipend. To terminate the plan:

- Go to the NexTEM
- Click **Create an Order For** and select your name on the list
- Click **New Order** and select **Terminate Plan Participation**
- Click **Finish** to submit

To create a new plan, follow these instructions:

- Go to the NexTEM
- Click **Create an Order For** and select your name on the list
- Click **New order** and select **Begin Plan Participation**
- You will be asked to provide information for your personal smartphone
- Review the Order Summary to the right then click **Submit**

# Frequently Asked Questions (FAQs)

**Q: How does the stipend program "work"?**

A: For eligible smartphones, Target pays (directly to the carrier) a monthly stipend that should not exceed the monthly carrier bill. The stipend is intended to cover the cost of the ETL's work-related use of the smartphone.

**Q: Do I need to enroll each month?**

**A:** No. Enrollment is a one-time activity; once you are enrolled *and approved*, your carrier bill will receive the stipend each month for as long as you remain enrolled in the California ETL Stipend Program.

- **Exception:** If you make *any* changes to your carrier account (i.e., change carriers, account numbers, phone numbers, device, etc.) you must terminate the plan first *and* then create a new plan to ensure you do not miss a reimbursement period. Follow instructions listed under 'How to Update an Existing (Active) Enrollment' section.

**Q: My monthly smartphone bill is less than the monthly reimbursement amount. Can I still receive the full stipend?**

**A:** No. When you enroll in the program, you will be asked to provide an accurate estimated monthly charge amount. If your work-related use represents a larger share of your monthly carrier bill than what is covered by the stipend, you should talk with your leader to determine whether a request for an additional payment should be submitted through the Target Travel and Expense System.

**Q: Are payroll taxes applied to the stipend?**

A: No, as long as the ETL is regularly using the smartphone for business reasons and is in an "active" status (e.g., not on a leave of absence). If an ETL goes on a leave of absence, some monthly stipends may be subject to tax.

**Q: Can I enroll in the California ETL Stipend Program for my personal tablet or laptop?**

A: No. The program applies to personal smartphones only. If you believe you should be reimbursed for your use of other devices, please reference the Travel and Expense Policy.

**Q: Why isn't Google Fi allowed to be used with the California ETL Stipend Program?**

A: Currently Google Fi doesn't accept Electronic Bank Transfers, wire transfers or electronic payments, so the stipend is unable to be processed by Google.

**Q: I was recently promoted to/hired into an ETL-IT position, but I'm not able to complete my enrollment. What's the issue?**

A: "In-training" positions are not eligible for the stipend. Once you are moved to a full, non "in training" role, you will be able to complete enrollment. Of course, you can use a Target-supplied device while in an "in-training" position.

**Q: Do I have to enroll in the California ETL Stipend Program in order to use my personal smartphone to access business-specific applications, such as Target Mobile Workspace?**

A: No. Participation in the California ETL Stipend Program is voluntary, and is independent of Target Mobile Workspace.

**Q: I don't want to use my personal smartphone for business activities. Do I have any other options?**

A: Yes. Participation is completely voluntary in this program. Target will provide all necessary tools and resources needed in order to perform your job.

3

## Policies and Documentation

[Travel and Expense Policy](#)

## Still Have Questions?

- For all California ETL Stipend Program questions, email Mobile.Reimbursement@target.com
- For all **Target Mobile Workspace** questions, call the CSC (612-304-HELP)

4